Good morning again, Your Honors. May I please record, my name is Ji Hsien-Li, I represent the petitioner. This case, there are also two issues here. The first one relates to the credibility determination. The BIA based its credibility, adverse credibility determination upon two things. The first one, the BIA, according to the BIA, my client testified inconsistently as to the duration of his detention. Well, his declaration said he was released after two days. Yes, Your Honor. And then in his testimony, he said he was released on the same day, so that's significant. Actually, Your Honor, if you read the transcript carefully, Your Honor, in the sequence of his testimony, the event Which page do you want me to look at? That would be page 105 of the administrative record, Your Honor. On the same day, saying on the same day, the petitioner most likely would be referring to the same day as he was given the warning. So he didn't specifically say that I was released on the same day I was arrested. Because if we read the page preceding that, page 104, he said, when were you arrested? And my client replied that I was arrested on May 19, 2004. And then what happened? And then after he was arrested, he was given warning. And then he was released on the same day. So petitioner's testimony can be read as that he was released on the same day he was given the warning not to participate in this kind of activities again. But not necessarily. But we can understand that there might be some confusion over that. Yes, Your Honor. And so he's asked about it. And he's asked about it, and then he says, well, maybe it was two days. I just don't remember clearly. So he's compounded any confusion that might have occurred in the testimony. I agree it might have been some ambiguity, and your client might have had an explanation. If he could have offered the explanation you just offered, then I think you've got an entirely different case. But he didn't. Probably I was the one who read too much into his testimony, because I was the one who followed up with the question, why did you say that it was two days? I didn't say it was two days after you were arrested. Actually, his written statement says that he was released two days after he was arrested. Let me ask you a different question, because unlike the case we were just discussing, in this case, on page 2 of the BIA's decision, it very clearly makes an alternative holding. Even assuming the respondent presented credible testimony, we find no error in the IJ's determinations in the alternative that, I'm going to paraphrase a bit, that the mistreatment did not rise to the level of past persecution. So there is the alternative ground here. Is that supported, even if there is some potential problem with the credibility finding? I think the BIA is clearly wrong in this aspect. Why? First of all, the BIA did not give any reasoning as to its decision. Well, they don't have to. Yeah, exactly. So we look at the IJ's decision to see what supported the BIA's decision in finding that the practitioner did not, the experience that he had in his home country did not rise to the level of past persecution. The IJ, in finding that the practitioner did not suffer past persecution, relied almost exclusively on Gu versus Gonzalez. But this case is clearly distinguishable from Gu. First of all, in Gu, Gu was arrested only once, and also the Gu, the record in Gu, the record did not show that he was not allowed to attend household church activities. But in this case, the practitioner was arrested twice, and he was detained altogether 17 days. That's not a brief detention. No, but we do have a number of, there are a lot of cases on what constitutes past persecution, and they all have the common theme that it's a pretty extreme concept, that discrimination isn't enough, and even arrest and detention in many cases is not enough. And the IJ goes through a laundry list of things. You know, he wasn't physically abused, his family wasn't physically abused, and so on and so forth. But there's quite a bit of reasoning as to why what happened to him, even if believable, was not bad enough to constitute persecution. And I guess I'm looking for what your view is of what happened to him that is that bad. Well, Your Honor, this is religious persecution. So in this court, religious persecution takes various forms. In Zhang v. Ashcroft, the case that I cited in my opening brief, and he says religious persecution may take various forms, including prohibition of membership of religious community. My client testified that he belonged to a particular religious group called shelters. Based upon the country reports, the shelters are labeled as evil cult. So the Chinese government has been coming down hard on that particular religious group. So this case definitely is distinguishable from Wu Gu or any other religious persecution cases because that petitioner was prohibited from participating in the religious activities, and he was prohibited to be a member of a particular religious group. So therefore, with or without physical abuses, simply because he was prohibited from being a member of that particular religious group, and that in itself would rise to the level of past persecution, in my opinion, also under the court's precedent decision. And also the persecution in this case, Your Honor, is not merely harassment. It's a pattern of persecution because the petitioner was arrested not just once but twice, actually within a short span of time, only several months apart. So it's clear from the record that the petitioner, if he continues to participate in the religious activities of his choice, he will face renewed persecution. And he was required to report back to the public security office just to make sure that he was not participating in so-called illegal religious activities. So that clearly shows that he was prohibited from taking part in religious activities. That in itself rises to the level of past persecution. Thank you. And unless the panel has other questions for me. You may save the rest of your time for rebuttal. Thank you. Thank you. May it please the Court. Puneet Seema for the respondent, the Attorney General. The Board properly affirmed the immigration judge's adverse credibility finding where the petitioner was inconsistent regarding the length of his detention, one of his two arrests, the very basis of his claim of persecution, and omitted the only conversation he had with a police officer regarding his religious activities, again, the basis of his claim of persecution, both of which went to the heart of his claim. Additionally, the Board and immigration judge also properly found, even if the petitioner had been credible, the harm he alleged failed to rise to the level of persecution. What's your response to counsel's argument that the prohibition of religious practice and worship forms is by itself persecution? Two responses, Your Honor. First, the entirety of this Court's precedent on persecution requires or makes clear that persecution is an extreme concept, not equivalent to harassment, not equivalent to discrimination, more than what one finds simply offensive. And second, the reference petitioner makes to Zhang, the citation to the prohibition on practicing religion, is not the holding in Zhang. That was simply where the Court was referencing the UNHCR guidelines on religious persecution and stating that it took those into account. In Zhang, the petitioner there, his brother was sentenced to two years of labor camp. Various other family members were persecuted in extreme, physically harmful ways. So that case does not help petitioner here. And the only harm that petitioner hears, oh, third, even petitioner was not really stopped from participating in his religious activities. He continued to attend church after the first arrest. He continued to attend church after the second arrest. He stated that he simply chose to stop attending house church after he received what the Board of Immigration Judge calls a private warning. But that private warning was not so severe that he mentioned it in his written asylum application, which he wrote just a few months after it occurred. So none of the harm that he alleges is severe by his own application as to amount to what this Court has found in persecution in the past. But the Court need not even get to that because the inconsistency in his testimony regarding whether he spent the night at a police station, that is a memorable event. This is not a case where there were 18 arrests and it's simply the date of the arrest that petitioner is confused. He claims that he was released immediately after. He attempts to explain his testimony today in a way that makes little sense given the context of the questioning. He was asked about his first arrest. He was asked what happened after that arrest. That does not lead to what happened after the second arrest, which is two steps in a chronological order here. He is clearly referring to that first May 19, 2004 arrest where on page 105 of the administrative record he says, they released me on the same day. And that's a quote. It doesn't make any sense that someone would say that if they had spent the night at a police station, spent two nights at a police station. And this is simply a few years afterwards. He also omitted a private warning that he claims was the reason he stopped practicing his religion. That is a significant fact that would have been included in a written asylum statement. And his explanation of that, that it wasn't necessary, is insufficient, as the Board of Immigration Judge found. And alternatively, the Board of Immigration Judge probably found that it failed to rise to the level of persecution. Subject to any further questions the Court may have. I don't believe we do have any government arrests. Mr. Li, you have a couple of minutes left for a rebuttal if you would like. Your Honor, I must emphasize this is a pre-Real ID Act case, and under the pre-Real ID law, and anything relating to dates are minor. And in this case, also, petitioner has nothing to gain from changing his story from two days to the same day, since he has nothing to gain. So, therefore, any uncertainty as to the length of the time that he spent at the detention center would not reflect on his credibility. And the second factor that the BIA used to support its adverse credibility finding, as the counsel for the Attorney General pointed out, is that he did not include the private conversation with the police officer. I will read the Department of Justice brief on page 30, and the Department of Justice states that the petitioner did testify that a policeman privately talked to him about his church participation after the second arrest, and told him that he could be detained or fined. However, petitioner never indicated that this was delivered as a malicious threat, especially since it was given by a relative of his church brothers and sisters. So, therefore, petitioner acted reasonably in not including a friendly conversation that does not add anything to his claim of persecution. So the two factors that the BIA used to support its credibility determination all fail miserably under the substantial evidence standard, the pre-real ID standard. So, therefore, this case, petitioner's petition for review should be granted. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate, again, the arguments that have been made. They've been very helpful.
judges: Graber, Bybee, Christen